FILED
CLERK
November 30, 2022
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
INTERPOOL, INC., d/b/a TRAC INTERMODAL,

                              Plaintiff,

**DECISION AND ORDER**

22-cv-01103 (JMA)(JMW)

            -against-

JJS TRANSPORTATION & DISTRIBUTION CO., INC.,

                              Defendant.
-----------------------------------------------------------------------X

**A P P E A R A N C E S:**

Lloyd Samuel Clareman, Esq.
**Lloyd S. Clareman, A Professional Corporation**
121 East 61st Street, 2nd Floor
New York, NY 10065
*Attorney for Plaintiff*

James A. Rose, Esq.
Desiree Mia Gargano, Esq.
**Certilman Balin Adler & Hyman, LLP**
90 Merrick Avenue
East Meadow, NY 11554
*Attorney for Defendants*

**WICKS,** Magistrate Judge:

      This is an action for breach of a commercial equipment lease agreement. Specifically, Plaintiff commenced this action for breach of contract against Defendant JJS Transportation & Distribution Co., Inc. ("Defendant" or "JJS"), arising out of the lease of a chassis[1] used in the

---

[1] According to the Complaint, "[a] chassis is essentially a sturdy metal frame with wheels and brakes, designed to support and carry an intermodal shipping container (usually 20 or 40 feet long) over the road when the chassis/container assembly is connected to and pulled by a tractor." (DE 1, at 2, ¶ 2.) *See, e.g.,*



shipping industry for over-the-road transportation of shipping containers. Defendant, as lessee, has allegedly utilized the equipment since 2021 and failed to pay the agreed-upon per diem rates. (DE 1, at p. 1.)

There have been various discovery disputes to date that have since been resolved (*see, e.g.,* DE 16, 18, 19, 20, and Electronic Order dated 10/17/2022). Before the Court at this time, however, are two motions: (1) Plaintiff's motion for sanctions (DE 21), and (2) Defendant's motion to withdraw as counsel of record for JJS (DE 23).

For the reasons set forth below, both motions are granted.

## I.   Motion for Sanctions

Plaintiff seeks costs it was "forced to incur as a direct result" of Defendant's failure to fulfill its discovery obligations. In response to Plaintiff's October 18, 2022, motion to compel seeking *inter alia* attorney's fees and sanctions (DE 21), the Court ordered the Defendant to respond to Plaintiff's document demands by October 31, 2022, otherwise the Court would consider a renewed application for costs and sanctions. (*See* Electronic Order dated Oct. 17, 2022.) October 31, 2022, came and went without responses, with Defendant continuing to shirk its discovery obligations. Plaintiff then moved to renew its motion to compel. (DE 19.)

At the November 3, 2022, status conference before the Court, argument was heard on Plaintiff's motion to compel. (Electronic Order dated Nov. 3, 2022.) Defendant's counsel advised that they did not meet the court-ordered deadline to produce documents because Defendant, JJS, without explanation failed to provide the documents to its counsel and there appeared to be a breakdown of communication lines between Defendant and its counsel. (*Id.*)

Since Defendant proffered no reasonable excuse for its continued non-compliance with its discovery obligations and defiance of this Court's order, the Court granted leave for Plaintiff to renew its motion for attorney's fees and costs. Defendant has yet to provide a single

responsive document to Plaintiff's August 5, 2022, document demands despite a clear Court order to do so.  (*See* DE 21.)  As a result of Defendant's apparent insouciance, Plaintiff's counsel Lloyd S. Clareman ("Clareman") now seeks $3,400.00 in attorney's fees for 6.8 hours of billable work associated with his necessary pursuit of Defendant's discovery.

### A. Applicable Standard

Rule 16 of the Federal Rules of Civil Procedure authorizes the imposition of sanctions—including those authorized by Rule 37(b)(2)(A)(ii)-(vii)—when a party fails to comply with other pretrial orders.  Fed. R. Civ. P. 16(f); *see Rahman v. Red Chili Indian Café, Inc.*, No. 17-CV-5156 (RA) (BCM), 2019 WL 6619893, at *3 (S.D.N.Y. July 12, 2019).  The Rule instructs that the sanctions must be "just," meaning that "the severity of the sanction must be commensurate with the non-compliance."  *Linde v. Arab Bank*, *PLC*, 269 F.R.D. 186, 195 (E.D.N.Y. 2010) (citing *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir.2007).  "The party seeking sanctions bears the initial burden of demonstrating non-compliance with a court order."  *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 119 (S.D.N.Y. 2018).

Courts look to several factors when considering the appropriate sanction: (1) the reason for the noncompliance, including the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the period of time the noncompliance persisted; and (4) whether the non-compliant party had been forewarned of the consequences of noncompliance.  *See Sanchez v. Jyp Foods Inc.*, No. 16-CV-4472 (JLC), 2018 WL 4502008, at *3 (S.D.N.Y. Sept. 20, 2018) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)).

The Court has a panoply of options available once it is determined that discovery sanctions are warranted.  "Rule 37 provides a district court with a wide range of sanctions which

it may apply to a wide range of circumstances -- potential sanctions extend from payment of expenses and similar monetary sanctions at one end of the spectrum to default judgment on the other." *Abante Rooter & Plumbing, Inc. v. Shore Funding Sols., Inc.*, No. CV 17-6499 (ADS)(AKT), 2019 WL 2436239, at *5 (E.D.N.Y. Mar. 6, 2019), *report and recommendation adopted*, 2019 WL 1986606 (E.D.N.Y. May 6, 2019). Indeed, courts "enjoy broad discretion in deciding whether and how to fashion a sanction pursuant to Rule 37." *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 68 (E.D.N.Y. 2012).

### B. Propriety of Sanctions Here

Defendant was made fully aware of the consequences of non-compliance (*see* DE 16, 18, 19, 20, Electronic Order dated October 17, 2022). Defendant's continued noncompliance with the Court's October 17, 2022 Order has been willful. The Court issued an Order requiring Defendant to produce documents by October 31, 2022. (Electronic Order dated October 17, 2022.) Defendant's counsel made Defendant aware "both in writing and verbally" of the Court's order and of "the possible consequences of violating [it]." (DE 22.) Defendant's counsel submits that Defendant simply has not been able to gather and transmit responsive documents within the time constraints placed on it. (DE 22.) The record, however, belies this assertion. Defendant's counsel's argument that "*[u]pon information and belief*, Defendant has made an effort to search for and compile the responsive documents," does not excuse Defendant's failure to communicate with their counsel or to provide an explanation. (DE 22 (emphasis added).)

Defendant has provided no reason whatsoever to justify its failure to respond to Plaintiff's requests in a timely fashion in the first instance, by the date they subsequently agreed to respond, or by the date the Court ordered them to respond. No affidavit or declaration from Defendant has been proffered. Defendant has not only disregarded a clear Court order, but also

4

continues to do so. Incredibly, Defendant has yet to produce any documents responsive to Plaintiff's August 5, 2022, document demands. *See Sullivan v. Aircraft Servs. Grp., Inc.*, No. 19 CV 6500 (MKB) (CLP), 2022 WL 16901850, at *4 (E.D.N.Y. Nov. 10, 2022) (imposing sanctions where defendant failed to comply with a clear court order despite the fact that plaintiff had now produced all of the outstanding documents).

The Court finds that Defendant's continued non-compliance with discovery is not justified, and imposing costs and fees incurred by Plaintiff's in obtaining discovery owed to them is the appropriate sanction. *Id.* at *4 ("Indeed, courts have awarded attorney's fees and costs where sanctions were appropriate but where the court found that the sanctioned party's conduct did not rise to a level that would warrant the more severe sanctions of dismissal or default."). [2]

### C. Assessment of Reasonable Costs and Fees

Next, the Court looks to see if the costs and fees sought are reasonable. Here, Clareman seeks $3,400.00 in attorney's fees based on a total of 6.8 hours at an hourly rate of $500 per hour. (DE 21-1.) This Court "enjoys broad discretion in determining the amount of a fee award." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 307 (2d Cir. 2011). The lodestar calculation, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," "creates a 'presumptively reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). "A party seeking an award of attorney's fees bears the burden to document 'the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflected, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done.'" *Bds. Trs. Ins., Annuity, Scholarship, & Apprenticeship Training Funds Sheetmetal Workers' Int'l Ass'n, Loc. Union No. 137 v. Liberty*

---

[2] To be clear, the record is devoid of any indication that the recalcitrant conduct was caused by or contributed to in anyway by Defendant's lawyers.

*Signs, Inc.*, No. CV 10-1737 (ADS)(AKT), 2011 WL 4374519, at *6 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 4373893 (E.D.N.Y. Sept. 19, 2011).

Clareman submits that he has expended 6.8 hours in pursuit of securing Defendant's compliance with its discovery obligations, including the two motions to compel filed in this matter. (DE 21-1.) Clareman provided a declaration attesting to the hours expended with respect Defendant's non-compliance with an itemized breakdown and description of each task conducted, (*see* DE 21-1). *See New York Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) (noting that fee applications should include "contemporaneous time records . . . [that] specify, for each attorney, the date, the hours expended, and the nature of the work done."). The Court notes that Defendant has not opposed the amount that Clareman seeks or the hours he submitted.

Upon review of these records, the Court finds the number of hours expended to be reasonable and directly related to Clareman's frustrated efforts to obtain Defendant's compliance with discovery. *See Sagax Dev. Corp. v. ITrust S.A.*, No. 1:19-CV-3386 (RA)(JW), 2022 WL 2663488, at *1 (S.D.N.Y. July 11, 2022) ("A court-awarded attorneys' fee must compensate only for 'hours reasonably expended on the litigation,' not for 'hours that are excessive, redundant, or otherwise unnecessary.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)).

A reasonable hourly rate is "'the rate a paying client would be willing to pay,' based on the 'prevailing [hourly rate] in the community . . . where the district court sits.'" *E. Sav. Bank, FSB v. Whyte*, No. 13-cv-6111 (CBA)(LB), 2015 WL 790036, at *8 (E.D.N.Y. Feb. 24, 2015) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182, 190 (2d Cir. 2007). In assessing a reasonable hourly rate, the court takes into consideration the market rate "prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience and reputation." *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The relevant "'community' for purposes of this calculation is the district where the district court sits." *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 190. "The party applying for fees must support the hourly rates it claims with, for example, evidence of counsel's expertise and prevailing market rates." *Gesualdi v. Bestech Transp., LLC*, No. 14-CV-1110(JS)(ARL), 2022 WL 866853, at *2 (E.D.N.Y. Mar. 23, 2022) (internal quotations omitted). Clareman was admitted to the New York bar in 1977 and has been practicing as a commercial litigator for forty-five years. (*See* DE 21-1 at 3-4.)

Clareman has been a solo practitioner for thirty years. (*Id.*) Clareman submits that "TRAC and other clients have found my hourly rate of $500 per hour to be reasonable and acceptable in light of my background and experience. I believe that this hourly rate is well within the range normally charged by comparable attorneys in the New York market." (DE 21-1.)

The Court finds the $500 requested hourly rate higher than what courts have in this district have approved and awarded. Though Clareman does not provide any concrete evidence of prevailing market rates with respect to the forum district, here in the Eastern District of New York, hourly rates appear to "generally range from $300.00 to $450.00 for partner-level attorneys, and $200.00 to $325.00 for those with less experience." *Perrone v. Amato*, No. 09-CV-316 (SIL), 2022 WL 595187, at *3 (E.D.N.Y. Feb. 27, 2022); *see also Pilitz v. Inc. Freeport*, No. CV 07-4078 ETB, 2011 WL 5825138, at *4 (E.D.N.Y. Nov. 17, 2011) (collecting cases).

For example, in *Perrone*, plaintiff's counsel was "a solo practitioner who was admitted to practice in 1978 and was engaged to serve as Plaintiff's trial counsel based on his 'extensive experience in Federal Civil Rights, personal injury and commercial litigation.'" *Perrone*, 2022 WL 595187, at *3. There, the court found that a $350 hourly rate was proper. *Id.* And in

7

*Opulen Ventures*, a solo practitioner and law firm owner with thirty-eight years in commercial litigation had submitted attorney's fees based on a $400 hourly rate. *See Opulen Ventures, Inc. v. Axcessa, LLC*, No. 12-CV-01776 (RRM)(RER), 2013 WL 829230, at *5 (E.D.N.Y. Jan. 22, 2013), *report and recommendation adopted*, 2013 WL 828922 (E.D.N.Y. Mar. 6, 2013). The court found that a $375 hourly rate was proper. *Id.*

There are no unique circumstances that would justify a departure from the prevailing market rates in this district. This is a relatively straight-forward breach of contract case, and the work associated with the pursuit of the discovery, including the motions, is not considered complex. In Plaintiff's opposition to Defendant's motion to withdraw, Clareman states, "there are no complex issues" in this routine breach of contract matter. (DE 24.) And the fees sought are largely related to email correspondence or drafting of motions to compel.

In sum, under the circumstances of this case, the Court concludes that $400 per hour is an appropriate rate on this application. *See MMP Cap., Inc. v. Punyakam, PPLC*, No. 2:20-CV-1755, 2022 WL 2161385, at *1 (E.D.N.Y. June 15, 2022) (approving $360 per hour in a breach of contract action for a practitioner with civil and commercial litigation experience that was admitted to the bar in 1996).

Accordingly, Defendant JJS is directed to pay the amount of $2,720 in fees to Plaintiff and is further directed to produce outstanding documents requested in Plaintiff's demands on or before January 11, 2023. If Defendant fails to do either, the Court will consider further applications for costs associated with compelling discovery or consider more severe sanctions such as preclusion or the striking of the answer.

## II.    Motion to Withdraw

Defendant is represented by James A. Rose and Desiree Mia Gargano of Certilman Balin Adler & Hyman, LLP ("Firm"). The Firm filed a motion pursuant to Local Rule 1.4 seeking an Order to withdraw as counsel for Defendant JJS. (DE 23.) The motion was served upon Defendant, and Defendant has not filed any opposition.

Counsel asserts that the attorney-client relationship with the principal of JJS, Joseph J. Sarcona.[3] has: "irretrievably broken down and cannot be restored, and as such this firm's further representation of JJS in this matter would be inappropriate." (DE 23 at 1.) Counsel states that they are "prepared to make a full *in camera* disclosure of these facts by [sic] should same be required by the Court." (DE 23 at 1.) Counsel further represents that this is unrelated to the payment of the firm's legal fees, the Firm is not seeking a charging or retaining lien on Defendant's file, and a copy of the letter-motion was served on both Defendant and Scarcona. (DE 23 at 2.)

Rule 1.4 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York governs the displacement of counsel who have appeared:

> An attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the Court and may not withdraw from a case without leave of the Court granted by order. Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar, and whether or not the attorney is asserting a retaining or charging lien. All applications to withdraw must be served upon the client and (unless excused by the Court) upon all other parties.

E.D.N.Y. Local R. 1.4.

---

[3] "Joseph J. Sarcona, III is the President, sole director, and owner of a majority of the authorized, issued and outstanding shares of JJS." (DE 23 at 1).

New York's Rules of Professional Conduct ("NYRPC") [4] neatly divide the bases for withdrawal into two broad categories, namely, mandatory (*see* NYRPC rule 1.16[b]) and permissive (*see* NYRPC rule 1.16[c]).  The grounds here, an uncooperative client, fall within the permissive bucket (*see* NYRPC rule 1.16[c] [7][5]).  The American Bar Association Code of Professional Responsibility ("Model Code") provides further guidance on permissive withdrawal of an attorney.[6]  Such circumstances include when "the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled," Model Code 1.16(b)(5), or when "the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client." *Id.* at 1.16(b)(6).  Both the Model Code and the NYRPC lend guidance as to what grounds constitute good cause to grant such a motion. *See Whiting v. Lacara*, 187 F.3d 317, 321 (2d Cir. 1999) (citing among others *Joseph Brenner Assocs. v. Starmaker Ent., Inc.*, 82 F.3d 55, 57 (2d Cir. 1996)).

"Whether to grant or deny a motion to withdraw as counsel is within the sound discretion of the district court." *Finkel v. Fraterrelli Brothers, Inc.*, No. 05 CV 1551 (ADS) (AKT), 2006 WL 8439497, at *1 (E.D.N.Y. Dec. 4, 2006) (citing *Whiting v. Lacara*, 187 F.2d 317, 320 (2d Cir. 1999)).  Satisfactory reasons for granting withdrawal include a client's failure to communicate with counsel. *See, e.g., Harris v. Millington*, No. CV 2007-3391 (ERK)(MDG),

---

[4] "The New York Rules of Professional Conduct govern the conduct of attorneys in federal courts sitting in New York as well as in New York State courts." *Steele v. Bell*, No. 11 Civ. 9343(RA), 2012 WL 6641491, at *2 n.1 (S.D.N.Y. Dec. 19, 2012) (citation omitted).

[5]  Withdrawal based upon an uncooperative client is permitted when "the client fails to cooperate in the representation or otherwise renders the representation unreasonably difficult for the lawyer to carry out employment effectively."

[6] Courts in this Circuit look to the Model Code for guidance regarding professional conduct of the bar. *See Arifi v. de Transp. Du Cocher, Inc.*, 290 F. Supp. 2d 344, 348 (E.D.N.Y. 2003) (Glasser, J.).

2008 WL 11438291 (E.D.N.Y. Sep. 18, 2008) (granting withdrawal based on client's failure to pay fees and because of material breakdown in attorney-client relationship).  When a client makes it unreasonably difficult for an attorney to effectively carry out representation for the client—like here—that is sufficient grounds to grant the application. *See Tokarz v. LOT Polish Airlines*, No. 96-CV-3154 (FB)(JMA), 2005 WL 8161165, at *2 (E.D.N.Y. June 20, 2005) (citations omitted).

      Plaintiff argues that more detail should be required for the breakdown in attorney-client relationship.  (DE 24.)  Motions to withdraw sometimes pose a unique challenge for counsel.  They ofttimes require a balancing:  on the one hand, the motion must sufficiently articulate the basis for the withdrawal, while on the other, it must not divulge client confidences, privileged communications or otherwise cause prejudice to the client.  *See* N.Y.S.B.A. Ethics Op. 1057 (June 5, 2015) (discussing the interplay between motions to withdraw and the duty of confidentiality owed to clients).  One option is for counsel to seek leave to file an affidavit or declaration under seal explaining in detail the reasons for the withdrawal.  *See, e.g.*, *Team Obsolete Ltd. V. A.H.R.M.A. Ltd.,* 464 F. Supp. 2d 164 (E.D.N.Y. 2006) (defense counsel filed affidavit under seal in support of motion to withdraw).

      Here, JJS's counsel previously represented to the Court, for instance, during the November 3, 2022, status conference that repeated attempts to communicate with their client regarding their representation in this matter have utterly failed.  Though counsel is prepared to make a full *in camera* disclosure, the Court finds here that further detail is not necessary to determine the instant application, especially given the numerous discovery disputes that relate to this same alleged breakdown in communication between counsel and their client.  The Court is satisfied that Defendant has made it unreasonably difficult for counsel to effectively represent

11

Defendant and there has been a clear breakdown in the attorney-client relationship. Despite Plaintiff's proffered parade of horribles, the Court finds that the Firm in fact has demonstrated satisfactory reasons for its withdrawal. Accordingly, James A. Rose, and Desiree Mia Gargano are hereby terminated as counsel in this matter.

Defendant shall have until on or before **December 29, 2022** to secure new counsel. Defendant JJS is reminded that a corporation may not appear *pro se* — that is, without counsel. *See Jones v. Niagara Frontier Transportation Authority*, 722 F.2d 20, 22 (2d Cir. 1983) ("[I]t is established that a corporation, which is an artificial entity that can only act through agents, cannot proceed *pro se*."). Additionally, as outgoing counsel, Rose and Gargano are directed to serve a copy of this Order upon personally upon Defendant and Scarcona at their last known addresses, as well as through email addresses, and file proof of service on ECF on or before **December 9, 2022.**

### III.   CONCLUSION

For the reasons stated, Plaintiff's Motion for Sanctions (DE 21), and Defendant's Motion to Withdraw as Attorney (DE 23), are granted as follows:

1. James A. Rose and Desiree Mia Gargano are hereby terminated as counsel of record in this matter.

2. Defendant JJS shall have until on or before **December 29, 2022** to secure and arrange to have new counsel file a Notice of Appearance.

3. Defendant is further directed to pay the amount of $2,720 in fees to Plaintiff and is further directed to produce outstanding documents requested in Plaintiff's demands on or before **January 11, 2023.**

4. The status conference currently scheduled for December 20, 2022 is rescheduled to an in-person status conference for **January 12, 2023 at 9:00 a.m.** in courtroom 1020, at which

    time a revised scheduled will be adopted for the remaining dates and deadlines in this case.

5. Outgoing JJS counsel are directed to serve a copy of this Order upon personally upon Defendant and Scarcona at their last known addresses, as well as through last known email addresses, and file proof of service on ECF on or before **December 9, 2022.**

Dated: Central Islip, New York
November 30, 2022

**S O   O R D E R E D:**

/s/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge